## SUPREME COURT.

ELIZABETH FOX, appellant agt. JONAS DUNCKEL, respondent.

The act of the legislature entitled "An act to amend an act to prevent animals from running at large in the public highways, and to create a short bar to actions under said act," (*Laws of* 1867, *ch.* 814,) is not a violation of the *constitution*, which declares that "no person shall be deprived of life, liberty or property, *without due process of law*." (*This act is distinguishable in this particular from the original act, passed in* 1862, *and which was held unconstitutional in Rockwell agt. Nearing*, 35 *N. Y.*, 302.)

*Fourth District, General Term, October*, 1869.

*Before* BOCKES, POTTER *and* ROSEKRANS, *Justices.*

APPEAL from judgment entered upon the report of a referee, for the taking and detention by the defendant of 21 cows.

The referee found, as matter of fact, that on the 5th day of August, 1867, the plaintiff owned the cows mentioned in the complaint, and on that day they entered and trespassed upon the lands of the defendant in the town of Palatine, Montgomery county. That while the said cows were so trespassing upon the lands, the defendant seized and took the same into his custody. That without unnecessary delay, on the 6th day of August, he made complaint in writing under oath, stating the facts to L. Marcellus. a justice of the peace of the said town of Palatine. That the said justice did then forthwith issue a summons under his hand, stating the facts of such seizure and complaint, and requiring the owner of such cows, or any party having an interest in the same, to appear before the said justice, at his office, in the said town, on the 17th day of August, then next, at 11 o'clock A. M., to show cause why said cows should not be sold, and the proceeds applied according to the provisions

of " an act to amend an act, entitled an act to prevent ani-mals from running at large in the public highway." That the said summons was delivered to a constable of the said town, who served the same on the same day as required by the said act, by posting copies of the same in six public and conspicuous places in said town. That while the defendant was retaining the said cows under the act aforesaid, and after he had the same five days. and before the said 17th day of August, the plaintiff commenced this action, and the sheriff took the said cows and delivered the same to the plaintiff, who has since had the same. That during the said five days, while the said cows were in defendants premises, he milked, and had the milk of the same. That said cows were worth at least $1,000.

The referee found and decided as conclusion of law, that the defendant had the right, under the act aforesaid, to seize the said cows, and take the same into custody, and that he was in the lawful possession of the same at the time of the commencement of this action, that the plaintiff had no right to the possession of them without a compliance on his part with the provisions of the said act; and further decided upon the whole case that the defendant was, at the time of the commencement of this action, entitled to the possession of the said cows, and he ordered judgment in favor of the defendant against the plaintiff, in accordance with the foregoing conclusion, with costs. The plaintiff appealed to this court.

J. GENTER *for plaintiff,*
J. D. WENDELL *for defendant.*

I. It is conceded that the proceedings of the defendant, under the law of 1867, were regular ; and that, if this law is constitutional, it affords a complete defense.

The law of 1862 was held to be unconstitutional, in *Rockwell* agt. *Nearing,* (35 *N. Y..,* 302,) mainly, if not ex-

clusively, upon the ground that it failed to provide for any trial or hearing before a justice; and it was the object and design of this amendatory act of 1867, to steer clear of the difficulties and remedy the defects pointed out in the above decision.

In the present act there are provisions for a trial and hearing upon all the questions that can arise in the case before the justice. Personal service of process is not required in addition to the summons required to be posted in six public places; for in the majority of cases the latter are quite sufficient to give personal notice to the owner of the property. Nor is a personal service always required to render a judicial proceeding regular. Common law actions, in many cases, can now be commenced by publication of summons alone. Upon the return of the summons, the owner of these cattle could appear and answer, notwithstanding there was no personal service, and issue could be regularly joined, and all subsequent proceedings can then be conducted as in civil actions. All questions that can arise in any civil action may then be litigated. In this case, there is no levying without process, or condemning without proof, or selling without execution. We have, in the statute of 1867, the remedy, the absence of which rendered the statute of 1862 unconstitutional.

In the case of *Rockwell* agt. *Nearing*, (35 *N, Y.*, 302,) it is said that chapter 459 of the laws of 1862 is unconstitutional, in so far as it authorizes the seizure and sale of animals found trespassing within a private enclosure without judicial process. The statute of 1867 obviates this difficulty by amending what is unconstitutional in the former statute, and furnishes the remedy upon which the constitutionality of the proceedings of this case depend.

Can, then, the learned counsel reasonably and successfully contend, in view of the above facts, that the law is invalid and unconstitutional, so far as it relates to private trespass, and that the act is in direct conflict with the bill

of rights, and the constitutional prerogative that no citizen shall be deprived of his property without due process of law ?

Before the court will declare that an act of the legislature is unconstitutional, a case must necessarily be produced and presented, the facts and circumstances of which furnish no reasonable doubt of its invalidity. (*Ex Parte McCollum*, 1 *Cow.*, 450; *Clark* agt. *city of Rochester*, 24 *Barb.*, 446; *People* agt. *Huntington*, 4 *N. Y. Leg. Obs.*, 187.)

II. It only remains to examine the question raised by the plaintiff, that there was an excess or abuse of authority on the part of the defendant. It is difficult to see how this can be reasonably claimed. That the defendant was obliged to milk said cows, there can be no doubt. The common impulse which excites kindness and forbids cruelty to animals, would prompt him to exhibit this token of humanity, if he had no other motive. That he could not have done otherwise than to use and mingle the milk with his own, no reasonable person can deny. Had he kept the milk in its crude, or original state, every one, who knows its nature, will say that it would have deteriorated in value, and ultimately become totally worthless. His right to keep the cows safe and secure within his stable cannot be questioned. He certainly was not obliged to keep them in his pasture. In what way, then, did he exceed or abuse his authority ? It must be patent to all that this question is either unfounded, or if it is to be decided, its decision must be in favor of the defendant, and extend to him the right and authority which he has exercised under the surveillance and direction of the law.

POTTER J. The only question discussed in this case is the constitutional validity of the act of the legislature entitled "an act to amend an act to prevent animals from running at large in the public highways, and to create a short bar to actions under said act," (*Chap.* 814, *laws of* 1867.) The

second section of this act declares it shall be lawful for any person to seize and take into his custody, and retain until disposed of according to law, any animal which may be trespassing upon premises owned or occupied by him." The third section authorized and made it the duty of any person who shall have seized and taken into possession any animal under the authority of the preceding section, to make immediate complaint in writing, under oath, stating the facts to a justice of the peace, of the town in which such seizure occurred; such justice was thereby given jurisdiction to have and determine such matter, and was directed to proceed in the same manner as in civil actions, except as specially charged in that act, and was directed, forthwith, to issue a summons under his hand, stating the fact of such seizure and complaint, and requiring the owner of the animal, or any party having an interest in the same, to show cause before such justice at a time and place to be specified in said summons, why said animal should not be sold, and the proceeds applied as directed in said act. The time to show such cause was fixed in the act, to be not less than ten nor more than twenty days from the issuing of the summons; any constable of the town, or any elector thereof, authorized to do so by the justice in writing thereon, was authorized to serve the summons; such service was required to be made by posting the same in at least six public and conspicuous places in said town, one of which places was required to be the nearest district school-house. At the time and place appointed for the return of the summons, the complainant, and any person interested in such animal, or his agents, were allowed to appear in the proceeding, and on filing an oath subscribed by him, denying any or all of the facts alleged in the complaint, should be deemed to have joined an issue in the proceedings, and the subsequent proceedings are directed to be as in civil actions, so far as they can be, unless otherwise provided in the act. The section further provides for the return of the summons,

the appearance of parties interested, a trial by jury, &c.,
by the justice, and if no sufficient cause be shown that a
warrant be issued by the justice, directed to a constable of
the town, commanding him to sell the animals at public
auction, in the usual manner of constable sales, for the best
price he can obtain, and return the proceeds of sale, and the
justice shall then adjudge the costs of the proceeding ac-
cording to the rates specified in the act, and the damages
sustained to complainant by reason of the trespass, the sur-
plus moneys to be paid to the owner or party entitled to the
same, in the manner therein prescribed, and if not demanded
within a year, to be paid by the justice to the overseers of
the poor of the town, &c.   The sixth section provides for
an appeal to the county court from the trial before the
justice.

Such are substantially, all the provisions of the act in
question, which are important to consider in passing upon
this case; and if the act is constitutional, the proceedings
under it are regular, and the defendant on the trial estab-
lishes a perfect defense.

It is claimed to be in violation of that part of section 6
of the first article of the constitution of the state of New
York, which declares that no person shall be deprived of
life, liberty, or property, *without due process of law.*   This
appeal is based upon the authority of *Rockwell* agt. *Near-
ing,* (35 *N. Y.*, 302,) which gave judicial construction to
the act of 1862, of which the act in question is an amend-
ment.   That act was held to be unconstitutional so far as
it authorized the seizure and sale of property without judi-
cial process, for a private trespass.   In that respect the act
of 1867 is clearly distinguishable from the act of 1862 ; the
act of 1867 clearly furnishes a court upon which it confers
jurisdiction in express terms, to issue process, to allow an
issue to be joined, to hear the parties upon the merits, to
adjudge thereon, as in other civil cases, with the right to
appeal to a higher court for review and trial.   Besides, the

case of *Rockwell* agt. *Nearing* clearly recognized as consti-
tutional, and as being *by due process of law*, all such sum-
mary proceedings as were recognized by statute or at com-
mon law, prior to the adoption of the "bill of rights." The
right to distrain cattle *damage feasant*, is as old as American
common law, and was recognized by our statutes prior to
the adoption of our constitution, (2 *Rev. Stat.* 517, 5. ed.,
*vol.* 3, *p.* 841; 3 *Black.*, *Com.* 6,) and proceedings under that
system, which provides forms of trial, and due precautions
against oppression, was ever regarded as "*by due process
of law.*" "It was a proceeding," says *Blackstone*, "arising
from the necessity of the thing itself, as it might otherwise
be impossible, at a future time, to ascertain whose cattle
they were that committed the trespass or damage," (3 *Com.*
6.) The learned commentator might have added, had he
lived in our day, that it might be sometimes doubtful
whether the owner of the cattle was sufficiently solvent,
taking into consideration what the statute exempts from
liability to execution, to pay the damages done by the tres-
pass. This proceeding is no new, severe, unknown, extra-
ordinary, or oppressive proceeding, nor is the statute to
be regarded as penal, but remedial. The party injured is
provided with a summary remedy, it is true, but a remedy
established by long-known usage, and rules of statute, and
common law, entirely suitable to the exigencies of the case,
giving the owner full protection against all excesses or
abuses which may grow out of the law. How, then, is this
law unconstitutional? Surely the legislature are not pro-
hibited from transferring the jurisdiction of assessing, or
appraising damages from fence viewers to justices of the
peace. Nor can it be contended that justices are less qual-
ified to appraise damages by sworn testimony than fence
viewers. Nor should the owner of beasts complain of a
change of the law that gives him a jury of the vicinage to
hear his defense, and to assess damages, nay, to add to his
security by the right to appeal to a higher tribunal. If,

then, the act in question, which confers jurisdiction on justices, is not inhibited by the constitution, the provisions made to carry out the proceedings to final judgment must be incident to the necessary exercise of the power conferred. Nor can the court declare the act to be unconstitutional because of the possibility, or even probability, that the officers or parties with whom power is intrusted to carry out its provision, may, or can, abuse that trust; nor even because the compensations for distraining and keeping such cattle are exorbitant; or because a short statute of limitation is enacted as to the right to the surplus arising from sales. The plaintiff is, I think, mistaken in his view of what the case of *Rockwell* agt. *Nearing* decides. Some of the strong remarks of Judge PORTER in that case, (*cited in the brief,*) based upon the assumption of the invalidity of the act of 1862, affording a summary remedy unknown to the common law, while appropriate in that case, do not apply to this. There it was held that there had been an abuse of power after the seizure of the cattle, here there had been none. That was not a seizure *damage feasant,* this is; that statute provided for seizure without judicial trial, this allows a trial and a defense upon the merits. In this the proceeding was by due process of law, in that there was no such proceeding. The cases are dissimilar in principle. I think the judgment should be affirmed.