## LEAVITT *vs.* THOMPSON.

Section two of chapter 814 of the laws of 1867, so far as it authorizes any person to seize and take into his custody "any animal which may be trespassing upon premises owned or occupied by him," to be disposed of under the subsequent provisions of that chapter, is unconstitutional and void.

The act of 1867, like the act of 1862, in effect imposes a penalty upon the owner of animals for a mere *private trespass ;* and in this respect cannot be distinguished in principle from the case of *Rockwell* v. *Nearing,* in the Court of Appeals. (35 *N. Y. Rep.* 302.)

The right of replevy is inseparable from the right of distress *damage feasant,* but the act of 1867 assumes to make the distress taken irrepleviable. Such a restriction upon the common law remedy of the owner in cases of *distress,* cannot be sustained as *due process of law. Per* MORGAN, J,

The trial by jury, as well as the appeal to a higher tribunal, provided for in the act of 1867, is without any virtue to protect the owner from an unjust sale and confiscation of his property ; as the only question necessarily involved in the issue to be tried by the court or jury, or reviewable on appeal, is, whether the *original caption was lawful. Per* MORGAN, J.

Leavitt *v.* Thompson.

It *seems* the damages for the trespass may be assessed and allowed to the distrainor after a sale of the animals, without notice to the owner.

Such a power to assess damages, without viewing the premises, and perhaps without evidence, is without precedent in the " law of the land." *Per* Mor-gan, J.

APPEAL from a judgment dismissing the complaint in an action to recover the possession of a cow and steer taken by the defendant while trespassing upon his premises, under authority of the act of 1867, entitled " An act to amend an act entitled an act to prevent cattle running at large in the public highways," &c. (*Laws of* 1867, *p.* 2036.) The cause was tried by the court without a jury. The judge found as matters of fact, that the plaintiff was the owner of the property, and on the 8th day of October, 1868, the cattle were found by the defendant trespassing upon his lands, upon which they had entered from the public highway; whereupon the defendant took them into his custody and immediately thereafter made due and proper complaint in writing, under oath, to E. D. Munson, a justice of the peace of the town in which the cattle were seized.

The complaint before the justice, after setting forth the facts of the seizure, &c., stated that " the damage done by said cattle for the trespass * * * and other trespasses within the last year, is five dollars."

The justice thereupon issued a summons requiring the owner to show cause before him on the 20th day of October, 1868, at nine o'clock in the forenoon, why said animals should not be sold and the proceeds applied as directed by the act. The summons was dated the 9th and served on the 10th, but in what manner does not clearly appear.

Before the return day of the summons the plaintiff brought this action to repossess himself of his property, and the proceedings before the justice were abandoned. The defendant in his answer justified the seizure under

the act of 1867, but did not claim redelivery of the property.

The judge held, as matter of law, that the justice acquired jurisdiction of the matter, and while the same remained before him, and prior to the return day of the summons, the plaintiff had no right to take the cattle out of the defendant's custody and repossess himself of the same.

*Hardin & Burrows*, for the appellant.

*T. & R. Earll*, for the respondent.

MORGAN, J. In *McConnell* v. *Van Aerman*, decided by us at the last December term, I understood the judges to concur in the opinion that the amended act of 1867, (to prevent animals running at large in the public highways,) did not obviate the constitutional objection to the act of 1862, so far as it authorized a person to seize and sell animals found trespassing upon his lands. Another ground was discussed in the opinion, upon which the judgment might have been placed; and since we made that decision, our attention has been called to the case of *Fox* v. *Dunckel*, (38 *How. Pr.* 136,) decided by the general term in the fourth district, which came to a different conclusion and held the act of 1867 to be valid, notwithstanding the decision of the Court of Appeals in *Rockwell* v. *Nearing*, (35 *N. Y. Rep.* 302.)

Under these circumstances, perhaps we ought to consider the question an open one, and review the grounds upon which we made our decision in *McConnell* v. *Van Aerman*, and if we fell into an error in that case, it is not too late to correct it.

The act of 1867 (*Laws of* 1867, *p.* 2036, *amending the act of* 1862, *Laws of* 1862, *p.* 842) differs in some respects from the latter, and doubtless the legislature intended to con-

form it to the requirements of the constitution, by adopting certain provisions which were omitted in the former act.

The first section of the act of 1862 made it unlawful for any cattle to run at large in any of the public highways of this State. The second section made it lawful for any person to seize such animals when in the highway and opposite to his land; and also to "seize and take into his custody and possession any animal which may be trespassing upon premises owned or occupied by him." The act of 1867 contains substantially the same provisions; but authority is given to overseers of highways and other officers to make the seizure when such cattle are so found running at large upon the highway; and the person suffering it or permitting it, is made subject to a penalty. The penalties are then enumerated, and an action given to any inhabitant of the town to sue for such penalties, or the penalties may be recovered by subsequent proceedings before the justice. It is not perceived that this new provision has anything to do with that part of the act authorizing private persons to make the seizure of cattle trespassing upon their lands.

After the seizure, the person making it was required by the act of 1862 to give immediate notice to a justice of the peace or a commissioner of the town, and thereupon the justice or commissioner of highways was authorized to sell the animals so seized, after notice of sale as prescribed by the act, and out of the proceeds the justice or commissioner was allowed to retain as fees, " for every horse, one dollar; cow, calf, or other cattle, one half dollar; and for every sheep or swine, twenty-five cents; and shall then pay to the person who shall have seized the said animal the sums following ; that is to say, for every horse so seized and sold, one dollar; for every cow, calf, or other cattle, one half dollar; and for every sheep or swine, twenty-five

cents; together with a reasonable compensation, to be estimated by such justice or commissioner, for the care and keeping of said animals from the seizure to the time of sale.

Under the act of 1867, the sale is to be made by a constable, and out of the proceeds the justice is required to "adjudge the costs of the proceedings, the same being allowed as in civil actions, and in addition thereto he shall allow to the party or officer making such seizure" the same sums as above specified in the act of 1862, "*together with the actual damages sustained by such party by reason of the trespass or breaking of such animal into his premises,* and a reasonable compensation to such person or officer, to be estimated by such justice, for the care or keeping of such animals from the time of the seizure thereof to the sale; and the said justice shall be allowed the sum of one dollar for each animal sold, and the constable the same fees as for the service of a summons and execution in civil actions."

By the act of 1867, the person making the seizure, before a sale of the property is authorized, is required to make a complaint on oath before a justice of the peace, stating the facts, and "such justice shall thereupon have jurisdiction to hear and determine *such matter,* and shall thereupon proceed as in civil actions, except as specially changed by this act."

The same section (§ 3) directs the justice immediately to issue a summons, requiring the owner of such animal, or any person having an interest in the same, to show cause, at a time and place to be specified, *why such animal should not be sold and the proceeds applied as directed by this act.*

Although the owner may be next neighbor to the person making the seizure, this summons is not to be served on him, but is to be posted up in six public places. I will

not dwell upon this provision, as it seems to have been decided against my views in another case.

By the same section the owner may appear at the time and place and deny "under oath any or all of the facts alleged in said complaint, and an issue shall be deemed joined in the said proceeding, and the subsequent proceedings shall be as in civil actions, *so far as they can be,* except as otherwise provided in this act." Then comes a trial, either before a justice or a jury ; but if the owner of the animals does not appear, "*or if the jury or the justice shall find after trial that no sufficient cause* is shown why such sale should not be made, as directed by this act, then the justice shall issue his warrant" of sale.

Section four of the act of 1867 permits the owner to redeem his cattle by submitting to certain exactions, if he applies before the hearing, or if he makes his application three days before the day of sale, and excuses his default. In the latter case, he is also required, upon such redemption, to pay "*the whole amount of the penalty, compensation and damages which the said justice* shall then adjust and award."

The sixth section of the act of 1867 gives an appeal to either party "who shall have appeared and contested in said proceedings before said justice."

"Such appeal can only be taken from the finding or determination that cause exists, or does not exist, for the sale aforesaid."

These provisions are not contained in the act of 1862.

The act of 1867 also contains a new section (§ 7) authorizing the justice to render judgment for costs against the complainant if he "shall fail, on the hearing, to show cause sufficient to obtain such sale." And if the jury or justice find "such seizure was malicious and without probable cause, the damages of the owner may be assessed, and judgment given for double the amount assessed, with costs."

Both acts contain a provision that in case the animal so

seized * * " shall have been so running at large or tres-
passing by the willful act of any other person than the
owner *to effect that object*, such owner shall be entitled to
the possession of such animal * * on paying to such per-
son * making such seizure the amount of compensation
fixed by such justice * * for the care and keeping of such
animal, without paying any other charges."

It is necessary to compare the provisions of the act of
1867 with its predecessor of 1862, in order to determine
whether the legislature has by these amendments avoided
the constitutional objections which existed against the
former act, and which received the condemnation of
the Court of Appeals, in *Rockwell* v. *Nearing*, (35 *N. Y.
Rep.* 302.)

It will be observed that the owner, although he may be
entirely innocent of any wrong, is subjected to the same
penalties as are prescribed in the act of 1862. He is re-
quired to submit to the same exactions as in the former
act, and in addition he is now liable for the damages of
the trespass, although not guilty of the trespass; for that
may have been committed by some third person accident-
ally or casually allowing the owner's cattle to escape into
another's lot, while lawfully driving them along the high-
way to a cattle fair, upon his own, and not on the owner's
account. A bailee for hire may commit the trespass with-
out "malice," as specified in the 7th section, and then the
owner is subjected to all the pains and penalties of the act,
besides paying the damages which the justice is to allow
*after* the proceeds of the sale are paid over to him by the
constable; or if the owner redeems before sale, he must
pay one half of the allowances, besides the " compensation
and damages which the said justice shall then adjust and
award," in pursuance of section four.

These allowances are arbitrary, as in the act of 1862, and
were considered as penalties and forfeitures imposed upon
the owners of property without any public necessity, or in

Leavitt *v.* Thompson.

pursuance of any power delegated to the Legislature. It is not and could not be made an offense in the owner of cattle, if they, without his fault, happen to be found casually trespassing upon another's premises, although he is subjected to the same forfeitures as though he was guilty of a wrong.

It was supposed, and I think decided, in *Rockwell* v. *Nearing*, that it was not competent for the legislature to punish ·the owner of cattle for a casual and private trespass upon another's premises; that such a power was not necessary in order to carry out any of the objects committed to the discretion of the legislature, and was not a matter of public concern, so as to bring it within the police power of the legislature.

It is not perceived how this objection to the act of 1862 is remedied by the act of 1867. It is true that the proceedings now authorized may be used to obtain damages for the trespass, and the act therefore partakes both of a remedial and penal character; but in my opinion the conjunction of the two does not in any way improve the original so as to take away the objection to that part which is clearly penal.

The owner may now, as then, be punished for a mere trespass done by his cattle upon another's land, whether he is guilty or not. His cattle may pass through the fence of his neighbor, on account of its being thrown down by a sudden wind, or through a gate left open by the carelessness of some stranger, and yet the owner is fined and his property confiscated, by proceedings under this statute, for the wrongful act of another, or without any wrong committed by anybody.

I respectfully submit that within the principle of the decision in *Rockwell* v. *Nearing*, the legislature transcended the limits of its authority when it attempted to confiscate the·owner's property for a trespass, of which the owner

may be entirely innocent, and for which another may be both legally and morally responsible.

It is supposed that it may be done under the acknowledged right of the owner of land to seize cattle *damage feasant,* whether the trespass was the act of the owner, or other person, not the owner. This is a purely civil remedy, and was confined to the *actual damages.* It was an acknowledged departure from the ordinary course of justice in other cases. It has been construed so strictly against the distrainor, that it is seldom resorted to.

But it is a great departure from the common law remedy by distress *damage feasant,* to include fines, penalties and forfeitures in the amount to be paid by the owner, in order to redeem his property.

It is said, however, in *Fox* v. *Dunckel,* (38 *How. Pr.* 142,) that the "proceeding is no new, severe, unknown, extraordinary or oppressive proceeding; nor is the statute to be regarded as penal, but remedial." It is impossible to claim for the statute of 1867, that it is *not penal,* if the court, in *Rockwell* v. *Nearing,* gave it a correct construction; for it subjects the owner to the same forfeitures and penalties, and what is purely remedial cannot change the character of those provisions which were regarded as penal. I am of opinion, therefore, that the act of 1867 does not change the character of the proceedings, and that, in respect to its penal character, it is subject to the same objection which the court thought fatal to it in *Rockwell* v. *Nearing,* so far as it authorizes the seizure and confiscation of the owner's cattle for a private trespass.

But I am also of opinion that this provision of the act of 1867, if it is to be regarded as purely remedial, cannot be sustained as *due process of law.*

It is admitted that cattle, by the common law, as well as by statute, when the constitution was adopted, could be distrained *damage feasant,* and held as a *pledge* until the damages were satisfied; that the damages, within twenty-

four hours, could, at the instance of the distrainor, be appraised by two fence viewers; and, after the appraisal, the cattle be put into the nearest pound; and, after six days, be advertised for sale by the pound-master, at public auction. (1 *R. S.* 134. 2 *id.* 517.) But the beasts thus seized *damage feasant,* could not be sold, if the owner paid the damages, and fees and charges for keeping them, *or if the owner concluded to contest the question by replevying them.* This he had a right to do at any time before or within the six days. (1 *R. S.* 134, §§ 19, 21. 2 *id.* 517, § 5.)

The first observation to be made upon the statute of 1857 is, that it does not purport to authorize the seizure of cattle *damage feasant,* but for a *trespass,* which may occur without any actual damage to the grass, herbage or fruit where the seizure is made. "If cattle be merely on the land, but not doing damage there, (which may very well happen if there be not at the time anything growing there,) it seems they cannot be distrained as *damage feasant.* (*Bradley on Distress,* 142.) There would probably be no actual damage if the ground was covered with snow, or if it was barren, sandy land. By the act of 1867, it is sufficient cause of distress and sale, if the cattle are found *trespassing,* without regard to any damage done by them. There need be no actual damage to authorize both a seizure and sale of the property. It is submitted that there is nothing in the law of distress *damage feasant,* to authorize the summary seizure and confiscation of the owner's property, as provided for in the act of 1867, for a *mere trespass,* unaccompanied with any actual damage.

But if we give it a more liberal interpretation, and allow that it is an attempt to regulate proceedings to recover damages done by beasts *damage feasant,* I am of opinion that it deprives the owner of what is known as *due process of law;* that is, the right to replevy his property by a judicial proceeding, and to contest not only the legality of the

seizure, but the measure of damages, before a jury of his country.

It is supposed by the learned justice who delivered the opinion in *Fox* v. *Dunckel*, that "the act of 1867 gave to the owner of the beasts a jury of the vicinage to hear his defense and to assess damages, nay, to add to his security by the right of appeal to a higher tribunal." (34 *How. Pr.* 142.) This is clearly a misapprehension, so far as it relates to a jury; and as to the appeal given by the sixth section, the provision is entirely worthless, except to review the decision of the justice as to the *sufficiency of the cause to authorize a sale*. We had occasion, in *McConnell* v. *Van Aerman*, to examine this statute as to the questions which are to be submitted to the jury, and came to the conclusion that the only issue to be tried or submitted was whether the cattle were seized while trespassing upon another's land; *for these facts alone authorize both a seizure and a sale of the property*. If there is no appearance, or "if (*see* § 3) the jury or the justice shall find, after trial, that no sufficient cause is shown why such sale should not be made as directed by this act," then a warrant of sale is to be issued and the property sold. By the second section the seizure is made lawful, if the animal seized is trespassing upon premises owned or occupied by the complainant. By the third section, the person making such seizure is required to make complaint on oath, stating the facts; that is, that the cattle were seized while trespassing on his lands. This being a sufficient cause for the seizure and sale, no other question is necessary to be submitted to the jury. It is only after the sale, and *the proceeds are paid over to the justice,* that the damages come in question. The justice then is required to make the allowance of damages, not only in the absence of the owner, but without any notice to him, either personally or by advertisement. This is also apparent from the language of the 4th section, authorizing the owner to excuse his default three days before

sale, and redeem his property by payment, among other exactions, of a "compensation and damages which the said justice shall then adjust and award." If they had been awarded by the justice on the *return day of the summons*, there would be no occasion for another provision authorizing the justice to adjust and award them after the return day, and before the sale.

If the judgment pass against the cattle or the owner by default, or after trial, *it only determines that sufficient cause exists for a sale of the property;* and from this judgment the owner may appeal to the county court, and that court can only reëxamine the question of sufficient cause, "for the sale aforesaid;" that is, whether the cattle were seized while trespassing upon the complainant's premises.

If, therefore, the caption was lawful, all the consequences follow, and the owner is deprived of his property by a sale of it to the highest bidder, unless he is willing to submit to the penalties or allowances prescribed in the act, and pay any sum for actual damages, "by reason of the trespass," which the justice shall allow. These damages being allowed by the justice, perhaps without evidence, and without notice to, and in the absence of, the owner of the property, may be entirely disproportioned to the injury. Such a power to assess damages without view or evidence, is without precedent in the "law of the land."

It cannot be said that the owner has had notice by advertisement of the summons, so as to appear before the justice to protect himself against an unjust assessment of damages. These damages are to be allowed *upon the payment* of the proceeds of sale to the justice; and it would be impossible for the owner to know at what time the complainant, justice and constable, may meet to divide the plunder by way of fees, allowances, compensations and damages.

It is also obvious that the act of 1867 necessarily takes away the right of the owner to replevy his property; for

to allow that would be to defeat the very object of its provisions. If the act is valid in respect to the seizure and sale of the owner's cattle while trespassing upon another's inclosure, then I think the judge was right in holding that replevin would not lie in such a case. Such an action would, as it did in the case at bar, completely disorganize all the machinery invented by the legislature to give effect to the remedy therein provided for the trespass. But I deny the power of the legislature to deprive the owner of this' right, which has always been allowed to him by the common law and by the statutes, both in this country and in England. Indeed it is inseparable from the right of distress. *Whenever there is a distress, replevin may be maintained;* and it may be brought in any case where a man has goods taken from him by another. (3 *Sel. N. P., by Wheat.* 1194, *n.* 1.) It is so much a matter of right that if a person by deed granted a rent, with a clause of distress, and granted further that the distress taken should be irrepleviable, yet they may be replevied, *such a restriction being against the nature of a distress,* (2 *Wheaton's Sel.* 669; 1 *Inst.* 145, *b ;*) and the sheriff must make replevy presently, so as not to deprive the owner of the use of his property. (*Id.*)

The cattle taken are to be held simply as a *pledge,* until satisfaction of the damages; *but the owner may tender amends for the damages,* and if they are not returned, he may bring replevin for a wrongful detention. In the case of working oxen, or cows, it would be highly unjust to allow the distrainor to retain them against the owner. Thus the owner could always repossess himself of the beasts on application to the sheriff, and by giving security. The question whether the sum tendered for amends was sufficient to cover the damages, was one of the questions which could be litigated in the replevin suit. To a plea of tender of a certain sum for amends, the defendant replied that the sum was not sufficient, and put himself upon

Leavitt *v.* Thompson.

the country.   In my opinion, the assessment of damages, on view by the fence viewers, which may be obtained on application of the person making the distress, was for the benefit of the owner, and did not take away the common law right of the owner to tender amends, *for this may be done before the distress.*

The *ex parte* assessment of damages upon view of the fence viewers, should not be deemed a final assessment, as it takes away the common law right of the owner to have them assessed by a jury, if he is dissatisfied with the amount.   It was and should be binding upon the person making the distress, as it is imposed upon him as a condition, and may be of great benefit to the owner of the beasts; for upon paying the sum certified, he is entitled to his beasts, without the necessity of bringing a suit to repossess himself of his property.

As none of the statutes of this State, up to 1862, deprived the owner of beasts taken *damage feasant* of this common law right, I think it existed in full force at that time; and that the owner could, after the cattle were distrained, and at any time before sale, bring replevin and compel the distrainor to litigate all the questions growing out of the trespass before a jury, as in common law actions.

It is entirely clear, upon the authorities, that the goods distrained could only be held as security, and could be redeemed by the owner at any time before they were sold— even after judgment was given for their return to the defendant in the replevin suit.

It is laid down in the books that nothing can be distrained, except what could be returned in as good plight as when taken.   (1 *Cow. Tr., old ed.,* 237.   3 *Black. Com.* 10.)   And the goods were, of course, redeemable.   Thus in an avowry *damage feasant,* the defendant had a verdict, and adjudged that he should have a return *retorno habendo* for the cattle and a *ca. sa.* for the damages; but if the party tenders the costs and damages, the sheriff, after such

tender, ought not to execute the *retorno habendo.*   But if for want of such tender the sheriff executes the writ and afterwards the costs and damages are paid, the owner is entitled to a writ of restitution.   (2 *Sellon's Pr.* 186.   *Cro. Car.* 162.   3 *Salk.* 54.)   And even after judgment for the defendant and a return irrepleviable, if the owner of the cattle tenders the whole judgment, which is ascertained upon the avowry, and is refused, he shall have detinue. (2 *Sellon's Pr.* 186.   2 *Inst.* 107.)

It is unnecessary to say that the law of 1867 attempts by. various methods to curtail and virtually destroy this common law remedy.   By the provisions of that law, the animals distrained are treated as virtually forfeited the moment a complaint is lodged with the justice.   They are not seized as a *pledge* for the damages, nor are they treated as a *pledge* for the damages in any of the subsequent proceedings.

While it is reasonable that the owner of the land should defend himself from injury, by driving out the beasts and likewise detaining those that did the injury, (*Gilbert on Distress,* 21,) the distrainor could not keep them against pledges, or for any purpose except to obtain his actual damages.   It would be a great innovation and perversion of this ancient remedy to employ it in order to subject the owner of the animals to the ·payment of penal damages and forfeitures, as he may be entirely innocent of the trespass.

The practical operation of the statute of 1862, as amended by the act of 1867, will be seen by reference to its effect in a given case.   Suppose A. hired his horses or oxen to B. for a single day, and through B.'s carelessness they should casually pass through C.'s open gate into his door-yard. . C., under the provisions of the act in question, could seize and take them into his custody and immediately make complaint to a justice of the peace.   Now how is A. to get back his horses or oxen, as the case may be?

Leavitt *v.* Thompson.

Under section four he may apply, *before* the hearing on the return of the summons, and demand them, and "shall be entitled to the possession upon payment to said justice of the several sums herein before required to be .paid to the said justice * * and to the person * * by whom the seizure aforesaid shall have been made * * * together with a reasonable compensation to the person * * making such seizure, for the care and keeping of such animal." This, in case of a span of horses, would give, by way of gratuity, two dollars to C., and two dollars to the justice, besides fees and compensation of officers. It will be observed that no damage for the "trespass" is assessed in this case; and in this respect the law of 1867 is strangely forgetful of its *remedial character.*

If, however, in the case supposed, A. should think it was his duty to appear before the justice, he is entirely helpless there, unless he is ready to commit perjury by denying the facts of the complaint; for how can he say that his horses were not seized while trespassing upon premises owned and occupied by C.? Even if he denies the complaint and issue is joined, he can by no means succeed in making a defense; for it is entirely clear that if the horses were seized while trespassing upon C.'s premises, judgment of sale must be pronounced; and upon appeal to the court, that is the only question subject to review.

Indeed the act in question offers a premium to A. if he will keep entirely away until after condemnation of his animals to a public sale; for, in that event, he may, if he applies three days before sale, excuse his default and redeem his horses by payment of one half of the forfeitures, in addition to the damages which the justice is then to adjust and award; and it would seem that this assessment of damages is to be made in the presence of A., which is at least of some advantage.

From this reference to the laws of 1867, it would seem that the trial by jury therein provided is a delusion, with-

out any virtue to protect the owner against a forfeiture and confiscation of his property. It is a mere instrument- ality to aid in perpetrating the wrong, and wholly un necessary even for that purpose, except to give a plausible color to the summary proceedings therein devised to con- fiscate the owner's property.

I am of opinion that we are called upon to adjudge the act of 1867 unconstitutional and void, so far as it author izes the seizure and sale of animals trespassing upon another's premises, under the provisions therein contained. It in effect imposes a penalty upon the owner of the ani- mals for a mere private trespass committed by them, in cases where the owner himself may be entirely without fault; and in that respect cannot be distinguished from *Rockwell* v. *Nearing,* in the Court of Appeals.

It also assumes to deprive the owner of his right of re- plevy, which is inseparable from the right of distress *damage feasant.*

This is a remedy which cannot be denied to the owner of animals taken *damage feasant,* according to the course of the common law. Upon these grounds the judgment should be reversed, and a new trial granted, without re- gard to the other questions which have been suggested upon the argument.

There was doubtless an irregularity in the summons, as no particular place was stated in it where it was to be returned.

But section 3 undertakes to cure the defect, I think, by clothing, or attempting to clothe, the justice with "juris- diction to hear and determine such matter," before any summons is issued. As this summons, however, is the only process for bringing the owner of the animals into court, it would seem to follow that it could not be amended if the owner did not appear. Whether in that event a new summons could be issued curing the defect, is a question I have not examined. There are other cases before us, in

which no such irregularity appears, and I think, therefore, we ought to pass over this irregularity if we are satisfied the judgment is erroneous, for the reasons already given.

MULLIN and DOOLITTLE, JJ., thought the case was controlled by the decision in *Rockwell* v. *Nearing,* in the Court of Appeals.

All concurring; judgment reversed and new trial granted; costs to abide the event.

[Adjourned GENERAL TERM, held at ROME, July 2d, 1870. *Mullin, Morgan* and *Doolittle,* Justices.]